

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:15-CR-108-1H(2)
No. 7:15-CR-108-2H(2)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **I N D I C T M E N T** |
| | ) | |
| RUSTICO YABUT IGNACIO | ) | |
| CASSIUS FLORES SAMSON | ) | |

THE GRAND JURY CHARGES THAT:

COUNT ONE
(Conspiracy - 18 U.S.C. § 371)

FACTUAL BACKGROUND

At all times relevant herein,

1. Oceanfleet Shipping Ltd. ("Oceanfleet") was a corporation located in Greece. Oceanfleet was the operator of the M/V Ocean Hope, a 19,354 gross ton, ocean-going vessel.

2. Defendant RUSTICO YABUT IGNACIO, a citizen of the Philippines, served as the Chief Engineer on the M/V Ocean Hope from on or about January 8, 2015, until on or about July 15, 2015. As the Chief Engineer, defendant RUSTICO YABUT IGNACIO was the highest-ranking Engine Department officer aboard the vessel.

3. Defendant CASSIUS FLORES SAMSON, a citizen of the Philippines, served as the Second Engineer on the M/V Ocean Hope from on or about March 29, 2014, until on or about July 15, 2015. As Second Engineer, defendant CASSIUS FLORES SAMSON was

the second highest-ranking Engine Department officer aboard the vessel.

## The M/V Ocean Hope

4. The *M/V Ocean Hope* operated as a general cargo carrier. The *M/V Ocean Hope* was approximately 594 feet in length, was registered in Liberia, and had an International Maritime Organization (IMO) number of 9147617.

5. The *M/V Ocean Hope* had an Engine Department headed by the Chief Engineer, defendant RUSTICO YABUT IGNACIO, who was assisted by the Second Engineer, defendant CASSIUS FLORES SAMSON, as well as a Third Engineer, a Fourth Engineer, two Oilers, a Fitter, and a Wiper. The Chief Engineer (defendant RUSTICO YABUT IGNACIO) had overall responsibility for the operation of the Engine Department and the formulation and implementation of Engine Department procedures. These procedures included tracking the generation, transfer, and disposal of sludge, oil residue, oily mixtures, and machinery space bilge water from the vessel and making entries into an Oil Record Book.

6. The Second Engineer (defendant CASSIUS FLORES SAMSON) aboard the *M/V Ocean Hope* reported directly to the Chief Engineer (defendant RUSTICO YABUT IGNACIO) and directly supervised the daily operations within the Engine Department,

including the management of sludge, oil residue, oily mixtures, and machinery space bilge water generated by the vessel.

7. The operation of large marine vessels like the *M/V Ocean Hope* generates large quantities of oily wastes, including: sludge, oil residue, oily mixtures, and machinery space bilge water:

a. Sludge is generated during the process of purifying fuel oil, lubricating oil, and other petroleum products, so that these products can be used in the engines aboard the vessel. The sludge generated as a result of this process is stored aboard the vessel in sludge tanks. Sludge may properly be disposed of either by incineration aboard the vessel or by offloading it at a port through the use of a licensed hauler and disposal facility.

b. Machinery space bilge water is created when water mixes in the bottom of the vessel, known as the "bilges," with oil that has leaked and dripped from the machinery and the lubrication and fuel systems for the engines. These "oily mixtures" are often referred to as "bilge waste," "bilge slops," and "slops from bilges," and are collected, stored, and processed to separate the water from the oil and other wastes using a pollution prevention control device known as an Oily Water Separator and an oil-sensing device known as an Oil Content Monitor. Machinery space bilge water may be discharged

3

overboard only after passing through an Oily Water Separator to ensure that it contains fifteen parts per million ("ppm") or less of oil, as measured by the Oil Content Monitor. If the Oil Content Monitor detects an oil content of greater than 15 ppm in the effluent, it sounds an alarm and shuts down the pumps or diverts flow back to the bilges in order to prevent the discharge of greater than 15 ppm of oil overboard.

## LEGAL BACKGROUND

8. The United States is part of an international regime that regulates the discharge of oil from vessels at sea: the International Convention for the Prevention of Pollution from Ships, as modified by the Protocol of 1978 (together MARPOL). MARPOL is embodied in agreements that the United States has ratified and has been implemented in the United States by the Act to Prevent Pollution from Ships (APPS), 33 U.S.C. §§ 1901 et seq. APPS makes it a crime for any person to knowingly violate MARPOL, APPS, or regulations promulgated under APPS. 33 U.S.C. § 1908. These regulations apply to all commercial vessels operating in the navigable waters of the United States or while in a port or terminal under the jurisdiction of the United States, including vessels operating under the authority of a country other than the United States. 33 U.S.C. § 1902(a)(1)-(3).

9. MARPOL Annex I ("Regulations for the Prevention of Pollution by Oil") established international standards governing the treatment and disposal of oily mixtures generated from the machinery spaces of a vessel. Under MARPOL, machinery space bilge water may be discharged overboard into the ocean only if it does not exceed 15 ppm of oil and the ship has in operation required pollution prevention equipment. This equipment includes: an oil filter, known as an Oily Water Separator; an alarm, known as an Oil Content Monitor; and an automatic stopping device, known as a Three-Way Valve. This equipment prevents the discharge of machinery space waste containing more than 15 ppm oil, the maximum legally permitted concentration of oil in the dischargeable mixture.

10. Consistent with the requirements contained in MARPOL, APPS regulations require that vessels such as the *M/V Ocean Hope* maintain a record known as an Oil Record Book in which the disposal, transfer, and discharge overboard of sludge, oil residue, oily mixtures, and machinery space bilge water must be recorded. 33 C.F.R. § 151.25(d). Discharges from the machinery spaces must be fully and accurately recorded in the Oil Record Book without delay by the person in charge of the operations. 33 C.F.R. § 151.25(d) and (h). The Oil Record Book also must record any emergency, accidental, or other exceptional discharges of oil or oily mixtures, including a statement of the
5

circumstances, and reasons for, the discharge. 33 C.F.R. § 151.25(g). The Oil Record Book must be maintained aboard the vessel for not less than three years, and be readily available for inspection at all reasonable times. 33 C.F.R. § 151.25(k).

11. The United States Coast Guard, an agency of the United States Department of Homeland Security, is charged with enforcing the laws of the United States and is empowered under Title 14, United States Code, Section 89(a) to board vessels and conduct inspections and investigations of potential violations and to determine compliance with MARPOL, APPS, and related regulations. In conducting inspections, United States Coast Guard personnel rely on the statements of the vessel's crew and documents, including information contained in Oil Record Books. The United States Coast Guard is specifically authorized to examine a vessel and its Oil Record Book for compliance with MARPOL and APPS. 33 U.S.C. § 1907(d); 33 C.F.R. § 151.23(a)(3) and (c); MARPOL Protocol, Annex V, Regulation 9(5); and 33 C.F.R. § 151.61(a) and (c).

## THE CONSPIRACY

12. Beginning in or about March 2015, the exact date being unknown, and continuing to on or about July 16, 2015, in the Port of Wilmington, North Carolina, and within the Eastern District of North Carolina, and elsewhere, defendants RUSTICO

6

Case 7:15-cr-00108-H   Document 1   Filed 12/09/15   Page 6 of 20

YABUT IGNACIO and CASSIUS FLORES SAMSON, and others both known and unknown to the Grand Jury, did knowingly and willfully conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury, to wit:

    a.    to knowingly fail to maintain an Oil Record Book for the *M/V Ocean Hope* in which all operations involving the transfer, discharge, and disposal of sludge, oil residue, oily mixtures, and machinery space bilge water were fully recorded, in violation of Title 33, United States Code, Section 1908(a); and Title 33, Code of Federal Regulations, Section 151.25(a), (d), (e), (g), (h) and (j);

    b.    to knowingly conceal, cover up, and falsify, and make a false entry in a record and document, that is, a false, fictitious, and misleading Oil Record Book for the *M/V Ocean Hope* that concealed the disposal, transfer, and overboard discharges of sludge, oil residue, oily mixtures, and machinery space bilge water, and contained entries falsely stating that required pollution prevention equipment had been used when it had not, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, namely the United States Coast Guard and the Department of Homeland Security, and in relation to and in contemplation of such matter, namely, a Port State Control vessel examination and inspection to determine compliance with MARPOL and United States law, in violation of Title 18, United States Code, Section 1519; and

    c.    to knowingly and corruptly persuade another person, and attempt to corruptly persuade another person, namely subordinate crewmembers aboard the *M/V Ocean Hope*, with intent to hinder, delay, and prevent the communication of information relating to the commission or possible commission of a federal offense to a law enforcement officer of the United States, namely United States Coast Guard Port State Control personnel, in violation of Title 18, United States Code, Section 1512(b)(3).

## PURPOSE OF THE CONSPIRACY

13. It was the purpose of the conspiracy to bypass the *M/V Ocean Hope's* pollution prevention equipment; discharge sludge, oil residue, oily mixtures, and machinery space bilge water directly into the ocean; and to conceal these activities by maintaining a fictitious Oil Record Book. It was a further purpose of the conspiracy to obstruct the Port State Control Examination by directing subordinate crewmembers to make false statements to the United States Coast Guard.

## MANNER AND MEANS

14. In furtherance of the conspiracy, defendants RUSTICO YABUT IGNACIO and CASSIUS FLORES SAMSON, along with others, employed the following manner and means:

   a. Defendant CASSIUS FLORES SAMSON along with other conspirators, used, and caused to be used, the vessel's General Service Pump to discharge oil residue, oily mixtures, and machinery space bilge water directly into the sea.

   b. Defendant CASSIUS FLORES SAMSON, along with other conspirators, used, and caused to be used, a bypass hose to discharge sludge directly into the sea.

   c. In an effort to conceal the vessel's discharges of sludge and oily wastes, the conspirators took the following steps:

i. Defendant CASSIUS FLORES SAMSON removed and caused to be removed the bypass hose and thereafter caused it to be thrown overboard.

ii. Defendants RUSTICO YABUT IGNACIO and CASSIUS FLORES SAMSON failed to record the discharges in the Oil Record Book and falsely recorded the use of pollution prevention equipment aboard the ship.

iii. Defendant RUSTICO YABUT IGNACIO made and caused to be made false entries into the ship's Oil Record Book.

iv. Defendant RUSTICO YABUT IGNACIO then presented the false Oil Record Book to the United States Coast Guard during the Port State Control Examination.

v. Defendant CASSIUS FLORES SAMSON made false statements to the United States Coast Guard during the Port State Control Examination.

vi. Defendants RUSTICO YABUT IGNACIO and CASSIUS FLORES SAMSON directed subordinate crewmembers to lie to the United States Coast Guard during the Port State Control Examination.

OVERT ACTS

15. In furtherance of the conspiracy, and to effect the objects thereof, there were committed by at least one of the co-conspirators in the Eastern District of North Carolina at least one of the following overt acts, among others:

9

a. Between on or about April 15, 2015, and on or about July 15, 2015, defendant CASSIUS FLORES SAMSON directed subordinate crewmembers to use a General Service Pump to discharge oil residue, oily mixtures, and machinery space bilge water from the *M/V Ocean Hope* directly overboard into the sea without using required pollution prevention equipment.

b. Between on or about April 15, 2015, and on or about July 15, 2015, defendants RUSTICO YABUT IGNACIO and CASSIUS FLORES SAMSON failed to record the use of the General Service Pump to discharge oil residue, oily mixtures, and machinery space bilge water from the *M/V Ocean Hope* in the vessel's Oil Record Book.

c. Between on or about April 15, 2015, and on or about July 15, 2015, defendants RUSTICO YABUT IGNACIO and CASSIUS FLORES SAMSON made false entries in the Oil Record Book for the *M/V Ocean Hope* stating that required pollution prevention equipment, namely the vessel's Oily Water Separator, had been used when it had not.

d. On or about June 14, 2015, defendant CASSIUS FLORES SAMSON ordered subordinate crewmembers to connect a bypass hose from the *M/V Ocean Hope*'s sludge tank to the overboard discharge valve.

e. Between on or about June 14, 2015, and on or about June 15, 2015, defendant CASSIUS FLORES SAMSON, and other

10

co-conspirators, used the bypass hose to discharge sludge from the *M/V Ocean Hope* through the overboard discharge valve directly overboard into the ocean.

  f. Between on or about June 14, 2015, and on or about July 15, 2015, defendants RUSTICO YABUT IGNACIO and CASSIUS FLORES SAMSON, and other co-conspirators, failed to record the discharge of sludge from the *M/V Ocean Hope* in the vessel's Oil Record Book.

  g. Between on or about June 15, 2015, and on or about July 8, 2015, defendant CASSIUS FLORES SAMSON and other co-conspirators concealed and destroyed the hose used to discharge sludge from the *M/V Ocean Hope* by discarding the hose into the ocean.

  h. On or about July 15, 2015, defendant RUSTICO YABUT IGNACIO caused the Oil Record Book for the *M/V Ocean Hope* to be presented to the United States Coast Guard in the Port of Wilmington, NC.

  i. On or about July 15 and 16, 2015, defendants RUSTICO YABUT IGNACIO and CASSIUS FLORES SAMSON instructed subordinate crewmembers to make false statements to the United States Coast Guard regarding the discharge of sludge, oil residue, oily mixtures, and machinery space bilge water from the *M/V Ocean Hope*.

All in violation of Title 18, United States Code, Section 371.

COUNT TWO
*(Knowing Failure to Maintain Accurate Oil Record Book –
Act to Prevent Pollution from Ships, 33 U.S.C. § 1908(a);
Aiding and Abetting, 18 U.S.C. § 2)*

1. Paragraphs 1 through 11 of Count One of this Indictment are hereby re-alleged and incorporated by reference herein.

2. On or about July 15, 2015, in the Port of Wilmington, North Carolina, and within the Eastern District of North Carolina, and elsewhere, defendants RUSTICO YABUT IGNACIO and CASSIUS FLORES SAMSON did knowingly fail to maintain, caused the failure to maintain, and aided and abetted the failure to maintain, an Oil Record Book for the *M/V Ocean Hope* in which quantities of sludge, oil residue, oily mixtures, and machinery space bilge water, and the discharge and disposal of these substances, were required to be fully recorded. Specifically, defendants RUSTICO YABUT IGNACIO and CASSIUS FLORES SAMSON maintained, caused to be maintained, and aided and abetted the maintenance of, an Oil Record Book that (1) failed to record the quantities of sludge, oil residue, oily mixtures, and machinery space bilge water stored within the *M/V Ocean Hope*; (2) failed to record the overboard discharges of oil residue, oily mixtures, and machinery space bilge water made using the

12

Case 7:15-cr-00108-H   Document 1   Filed 12/09/15   Page 12 of 20

vessel's General Service Pump and without the use of an Oily Water Separator and oil monitoring equipment; and (3) failed to record overboard discharges of sludge and oil residue.

All in violation of Title 33, United States Code, Section 1908(a); Title 18, United States Code, Section 2; and Title 33, Code of Federal Regulations, Section 151.25(a), (d), (e), (g) (h), and (j).

## COUNT THREE
*(Obstruction of Justice, 18 U.S.C. § 1519; Aiding and Abetting, 18 U.S.C. § 2)*

1. Paragraphs 1 through 11 of Count One of this Indictment are hereby re-alleged and incorporated by reference herein.

2. On or about July 15, 2015, in the Port of Wilmington, North Carolina, and within the Eastern District of North Carolina, and elsewhere, defendants RUSTICO YABUT IGNACIO and CASSIUS FLORES SAMSON did knowingly conceal, cover up, and falsify, and make false entries and omissions, and did knowingly aid and abet the concealment, cover up, falsification, and making of false entries and omissions, in a record and document, that is, a false, fictitious, and misleading Oil Record Book for the *M/V Ocean Hope* that concealed the disposal and discharge of sludge, oil residue, oily mixtures, and machinery space bilge water, and contained entries falsely stating that required pollution prevention equipment had been used when it had not,

13

with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, namely the United States Coast Guard and the Department of Homeland Security, and in relation to and in contemplation of such matter, namely, a Port State Control vessel examination and inspection to determine compliance with MARPOL and United States law.

All in violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT FOUR
*(False Statements - 18 U.S.C. § 1001(a)(2))*

1. Paragraphs 1 through 11 of Count One of this Indictment are hereby re-alleged and incorporated by reference herein.

2. On or about July 15, 2015, in the Port of Wilmington, North Carolina, and within the Eastern District of North Carolina, and elsewhere, defendant CASSIUS FLORES SAMSON, in a matter within the jurisdiction of the United States Coast Guard, an agency of the executive branch of the Government of the United States, did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, that is, defendant CASSIUS FLORES SAMSON falsely stated to United States Coast Guard personnel that: (1)

14

he did not know why the sludge pump was equipped with an extra flange; (2) he did not know why there was oil residue in the overboard discharge equipment; and (3) the Oily Water Separator aboard the vessel had not been bypassed; knowing these statements and representations to be untrue.

All in violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT FIVE
*(Obstruction of Justice - 18 U.S.C. § 1505)*

1. Paragraphs 1 through 11 of Count One of this Indictment are hereby re-alleged and incorporated by reference herein.

2. On or about July 15, 2015, in the Port of Wilmington, North Carolina, and within the Eastern District of North Carolina, and elsewhere, defendant CASSIUS FLORES SAMSON did corruptly influence, obstruct, and impede, and endeavor to influence, obstruct, and impede the due and proper administration of the law under a pending proceeding by the United States Coast Guard and the Department of Homeland Security, that is, during a vessel examination of the *M/V Ocean Hope* to determine the vessel's compliance with MARPOL, APPS, and United States law, falsely stated to United States Coast Guard personnel: (1) he did not know why the sludge pump was equipped with an extra flange; (2) that he did not know why there was oil

15

in the overboard discharge equipment; and (3) that the Oily Water Separator aboard the vessel had not been bypassed.

All in violation of Title 18, United States Code, Section 1505.

## COUNT SIX
*(18 U.S.C. § 1512(b)(3) – Witness Tampering)*

1. Paragraphs 1 through 11 of Count One of this Indictment are hereby re-alleged and incorporated by reference herein.

2. On or about July 15 and 16, 2015, in the Port of Wilmington, North Carolina, and within the Eastern District of North Carolina, and elsewhere, defendant RUSTICO YABUT IGNACIO knowingly and corruptly persuaded another person, and attempted to corruptly persuade another person, with intent to hinder, delay, and prevent the communication of information relating to the commission or possible commission of a federal offense to a law enforcement officer of the United States. Specifically, defendant RUSTICO YABUT IGNACIO directed a subordinate crewmember, an oiler with initials "R.V.", to mislead and lie to the United States Coast Guard by denying knowledge of the overboard discharge of sludge, knowing then and there that such statements would be untrue.

All in violation of Title 18, United States Code, Section 1512(b)(3).

## COUNT SEVEN
### (18 U.S.C. § 1512(b)(3) - Witness Tampering)

1. Paragraphs 1 through 11 of Count One of this Indictment are hereby re-alleged and incorporated by reference herein.

2. On or about July 15 and 16, 2015, in the Port of Wilmington, North Carolina, and within the Eastern District of North Carolina, and elsewhere, defendant CASSIUS FLORES SAMSON knowingly and corruptly persuaded another person, and attempted to corruptly persuade another person, with intent to hinder, delay, and prevent the communication of information relating to the commission or possible commission of a federal offense to a law enforcement officer of the United States. Specifically, defendant CASSIUS FLORES SAMSON, on an occasion separate and apart from Count Six above, directed a subordinate crewmember, an oiler with initials "R.V.", to mislead and lie to the United States Coast Guard by reporting to the United States Coast Guard that the Oily Water Separator aboard the *M/V Ocean Hope* was used to process machinery space bilge water, knowing then and there that such statements would be untrue.

All in violation of Title 18, United States Code, Section 1512(b)(3).

## COUNT EIGHT
### (18 U.S.C. § 1512(b)(3) – Witness Tampering)

1. Paragraphs 1 through 11 of Count One of this Indictment are hereby re-alleged and incorporated by reference herein.

2. On or about July 15 and 16, 2015, in the Port of Wilmington, North Carolina, and within the Eastern District of North Carolina, and elsewhere, defendant CASSIUS FLORES SAMSON knowingly and corruptly persuaded another person, and attempted to corruptly persuade another person, with intent to hinder, delay, and prevent the communication of information relating to the commission or possible commission of a federal offense to a law enforcement officer of the United States. Specifically, defendant CASSIUS FLORES SAMSON, on an occasion separate and apart from Counts Six and Seven above, directed a subordinate crewmember, an engineer with initials "C.S.", to mislead and lie to the United States Coast Guard by reporting to the United States Coast Guard that the Oily Water Separator aboard the *M/V Ocean Hope* was used to process machinery space bilge water, knowing then and there that such statements would be untrue.

All in violation of Title 18, United States Code, Section 1512(b)(3).

18

## COUNT NINE
### (18 U.S.C. § 1512(b)(3) – Witness Tampering)

1. Paragraphs 1 through 11 of Count One of this Indictment are hereby re-alleged and incorporated by reference herein.

2. On or about July 15 and 16, 2015, in the Port of Wilmington, North Carolina, and within the Eastern District of North Carolina, and elsewhere, defendants RUSTICO YABUT IGNACIO and CASSIUS FLORES SAMSON knowingly and corruptly persuaded another person, and attempted to corruptly persuade another person, with intent to hinder, delay, and prevent the communication of information relating to the commission or possible commission of a federal offense to a law enforcement officer of the United States. Specifically, defendants RUSTICO YABUT IGNACIO and CASSIUS FLORES SAMSON, on an occasion separate and apart from Counts Six, Seven, and Eight above, directed subordinate crewmembers, an oiler with initials "C.V." and a wiper with initials "A.R.", to mislead and lie to the United States Coast Guard by denying knowledge of the overboard discharge of sludge, knowing then and there that such statement would be untrue.

(SPACE LEFT BLANK INTENTIONALLY)

All in violation of Title 18, United States Code, Section 1512(b)(3).

A TRUE BILL

**REDACTED VERSION**
Pursuant to the E-Government Act and the federal rules, the unredacted version of this document has been filed under seal.

_____
FOREPERSON

12-9-2-15
_____
DATE

THOMAS G. WALKER
United States Attorney

By: BANUMATHI RANGARAJAN
Assistant United States Attorney
Criminal Division

JOHN C. CRUDEN
Assistant Attorney General
Environment & Natural Resources Division
Department of Justice

By: BRENDAN SELBY
Trial Attorney
Environmental Crimes Section

By: SHANE N. WALLER
Trial Attorney
Environmental Crimes Section

20